UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID BRADLEY,

    Plaintiff,

v.

Case No. 07-14449

Honorable Patrick J. Duggan

JAMES B. PEAKE, Secretary, Department
of Veterans Affairs,

    Defendant,

_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on October 23, 2008.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                   U.S. DISTRICT COURT JUDGE

This action arises from Plaintiff David Bradley's ("Plaintiff") employment with the Veterans Affairs Medical Center. Plaintiff worked for almost nine years in the center's Mental Health Intensive Case Management division ("MHICM"), an outpatient psychiatric program, until he was detailed and ultimately reassigned to an inpatient psychiatric unit referred to as "B2North" on July 13, 2006. Plaintiff alleges that he was subjected to unlawful sex discrimination and retaliation during his employment at MHICM culminating in his reassignment to B2N. Presently before the Court is Defendant's motion for summary judgment. The issues have been fully briefed and a

hearing was held on October 2, 2008. For the reasons set forth below, the Court grants Defendant's motion for summary judgment.

**I. Factual and Procedural Background**

Plaintiff is a psychiatric Licensed Practical Nurse ("LPN"). In 1997, he was hired by the Veterans Affair Medical Center to work in MHICM in Detroit. There, Plaintiff worked as an LPN Case Manager under the supervision of Marla Gresham ("Gresham"). Plaintiff indicates that his employment went without incident until late 2004. Around that time, Plaintiff complained that he was not receiving equal pay for equal work because of his gender and race. Less than a month after the issue was resolved in his favor, Plaintiff asserts that he received a "Letter of Counseling" from Gresham regarding excessive use of sick time in one annual quarter despite his documented illness during that time. No further action was taken on this issue.

Beginning in late 2005, however, a string of medication errors were attributed to Plaintiff. On December 15, 2005, one of Plaintiff's patients was taken to Urgent Care to determine if he was toxic for Tylenol overdosage after Plaintiff delivered a bottle of the drug that lacked dosage instructions. On January 4, 2006, a registered nurse overseeing MHICM discovered that another of Plaintiff's patients had not received a prescribed 90-day supply of medication. The patient had been without the drug since mid-October. On January 18, 2006, yet another patient phoned a MHICM registered nurse because Plaintiff had provided him only one of his four prescribed medications during a visit the previous day. Based on these errors, Gresham issued a memorandum on January 24, 2006, notifying Plaintiff that he would be detailed to B2North for up to 90 days.

Before the detail began, however, Plaintiff's union intervened on his behalf. Gresham ultimately agreed to develop an Individual Development Plan ("IDP") for Plaintiff in lieu of having him detailed to B2North. The IDP was designed to reorient Plaintiff with his responsibilities as an LPN Case Manager and the policies and procedures of MHICM. Plaintiff completed the IDP during February 2006 under the supervision of MHICM Registered Nurse Vivian Lucas. An IDP is not considered disciplinary action and no further action was taken against Plaintiff for the aforementioned medication errors. Based on this incident, however, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging sex discrimination and retaliation.

According to Gresham, the IDP appeared to have resolved Plaintiff's problems until May 2006. Around that time, Gresham asserts that Plaintiff began making procedural and documentation errors. Specifically, Gresham alleges that Plaintiff gave an injection without first checking the patient's blood pressure contrary to standard nursing practice; that Plaintiff failed to order refills for his patients prior to scheduled delivery dates; that he failed to chart patient calendars for July; that, when Plaintiff did chart patient calendars, he made charting errors; that he failed to maintain an updated travel log for his government vehicle; and that he lost his government issued pager. Plaintiff maintains that some of these mistakes were fabricated and that others were insignificant and commonly tolerated in MHICM.

Nonetheless, Gresham detailed Plaintiff to B2North on July 13, 2006, after meeting with Plaintiff and his union representative regarding the allegations. Thereafter, Plaintiff

amended his EEOC complaint to include claims that he was transferred because of sex discrimination and retaliation. As the EEOC investigation proceeded, Plaintiff continued to work as a psychiatric LPN in B2North at the GS6 pay level–the same pay he had been receiving in MHICM. B2North uses a computerized barcode system to dispense medications that reduces the charting responsibilities for LPNs. Gresham felt the reassignment was necessary to ensure patient safety.

Plaintiff brought this action after receiving his right to sue letter from the EEOC. Defendant filed the motion for summary judgment presently before the Court on grounds that Plaintiff failed to establish a prima facie case of sex discrimination and retaliation. Defendant further argues that, even if Plaintiff established a prima facie case, Defendant has legitimate, non-discriminatory reasons for reassigning Plaintiff that he cannot prove are pretext.

**II. Standard of Review**

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *See id.*

### III. Title VII Discrimination and Retaliation

Plaintiffs can prove Title VII employment discrimination claims with direct or circumstantial evidence. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Absent direct evidence, however, such claims are subject to the *McDonnell Douglass* burden shifting analysis. *Id.*[1] Pursuant to the approach, a plaintiff must first establish a prima facie case of discrimination or retaliation by a preponderance of the evidence. *Id.* If the plaintiff establishes a prima facie case, it is presumed that the employer unlawfully discriminated against him until the employer articulates some legitimate, non-

---

[1] "Direct evidence is that evidence which, if believed, requires no inferences to conclude that unlawful retaliation was a motivating factor in the employer's action." *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 543-44 (6th Cir. 2008). Plaintiff did not submit any direct evidence of sex discrimination or retaliation.

discriminatory reason for the employment decision. *Id.* If the employer makes such a showing, plaintiff must then prove by a preponderance of the evidence that the articulated reason is false and offered as pretext for the unlawful discrimination. *Id.* at 415. Throughout this process the burden of persuasion remains on the plaintiff. *Id.* However, at the summary judgment stage, plaintiff's burden of establishing a prima facie case is "not onerous;" rather, "plaintiff's burden is merely to present evidence from which a reasonable jury could conclude that the plaintiff suffered an adverse employment action 'under circumstances which give rise to an inference of unlawful discrimination.'" *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 528 (6th Cir. 2007) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094 (1981)).

**A. Sex Discrimination**

Count I of Plaintiff's complaint charges Defendant with sex discrimination. Plaintiff alleges that his gender was a motivating factor in Gresham's decision to reassign him, the only male employee in MHICM at the time, to B2North. To establish a prima facie case of gender discrimination, Plaintiff "must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). The first two elements are not in dispute in this case.

Defendant first argues that Plaintiff failed to establish that an adverse employment action took place. To sustain an action for employment discrimination, the adverse

6

employment action must be materially adverse. *See Hollins v. Atlantic Co., Inc.*, 188 F.3d 652, 662 (6th Cir. 1999). To qualify as materially adverse:

> [the] change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Id.* (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)). Although this definition leaves room for variation depending on the circumstances, an employee's subjective preference or "bruised ego" is insufficient to establish a materially adverse change. *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 183 (6th Cir. 2004); *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 886 (6th Cir. 1996). Consequently, "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims." *Kocsis*, 97 F.3d at 885.

Defendant argues that Plaintiff's reassignment to B2North fails to constitute an adverse employment decision. In his response brief, Plaintiff asserts that he was "unceremoniously stripped of his Case Manager title" and that he had "never been so humiliated." (Pl.'s Resp. at 11.)[2] Plaintiff further asserts in an affidavit that, because of

---

[2] In a subsection of Plaintiff's response brief titled "Plaintiff Was Subjected To An Adverse Employment Action By Defendant," counsel explains at length why Plaintiff felt isolated as the only long term male LPN in MHICM. Although this discussion would be relevant in the context of a hostile work environment claim, such a cause of action is not at issue in this case. In fact, Plaintiff is barred from raising such claims in this Court because he did not exhaust his administrative remedies in regard to such claims. (*See* Def.'s Mot. to Dismiss, Ex. 6.) At no time during the discussion of Plaintiff's alleged feelings of isolation does counsel

7

his reassignment to B2North, he is no longer eligible for a raise from the GS6 pay grade to GS7–a raise that he asserts is available to LPNs in MHIMC. (Pl.'s Aff. ¶ 30.)[3] After considering the briefs, counsels' oral arguments, and the details of the VAMC's pay scale policies, the Court must conclude that Plaintiff failed to establish an adverse employment action.

Although changes in title or limitations on opportunities to advance can support a finding of adverse employment action, such changes are not always sufficient. *See Freeman v. Potter*, 200 Fed. Appx. 439, 444 n.2 (6th Cir. 2006) (collecting cases). For example, the Sixth Circuit held in *Wanchik v. Great Lakes Health Plan, Inc.* that a transfer from the position of CEO in one company to Vice President of Marketing of another did not constitute a materially adverse change despite the plaintiff's allegations that the change caused her a loss of prestige and material duties. 6 Fed. Appx. 252, 258-59 (6th Cir. 2001). The Fifth Circuit similarly held, "[A] decision made by an employer that only limits an employee's opportunities for promotion or lateral transfer does not qualify as an adverse employment action under Title VII." *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003).

---

identify any action that could be considered an adverse employment action.

[3]Like his response brief, Plaintiff's affidavit primarily addresses factors relevant to hostile work environment claims. The single assertion regarding Plaintiff's eligibility for a raise, which is noticeably absent from the argument in his brief, is the only statement that arguably supports a finding of adverse employment action.

At the hearing on October 2, 2008, Plaintiff's counsel primarily relied on this alleged inability to obtain a raise to GS7 to establish adverse employment action. Because neither party addressed this point in their briefs the Court requested that Defendant submit a supplemental brief explaining the pay opportunities for LPNs in its MHICM and B2North units. Defendant filed the requested brief on October 10, 2008.

In this case, Plaintiff fails to present supporting evidence, or even argument, to distinguish himself from such cases. *See Freeman v. Potter*, 200 Fed. Appx. at 444-45 (6th Cir. 2006) (discussing a need for additional evidence when an employee's allegation of a materially adverse employment action depends on a difference in prestige between two positions). Plaintiff fails to explain, for example, the significance of the title "Case Manager" in the context of his work responsibilities. Furthermore, Plaintiff's reliance on his alleged inability to advance to GS7 has been proven to be misplaced. Based on arguments made by Plaintiff's counsel at the October 2, 2008, hearing, the Court requested that Defendant file a supplemental brief explaining its pay scale policies for LPNs in its MHICM and B2North units. According to the VAMC's Handbook, LPNs in both units are eligible for a raise to GS7 but only if approved by the regional Veterans Integrated Service Network. (Def.'s Supp. Brief at 1.) The GS7 raise is meritorious, rather than automatic, and reserved for LPNs who "successfully and consistently demonstrate the exercise of independent technical judgment (without the need for readily available supervision), <u>as well as</u> a comprehensive and thorough working knowledge of the most complex or difficult practices or procedures." (Decl. of Teresa Gully ¶ 13 (quoting VA Handbook 5005/3, Part II, Appendix G13(5)).) Ultimately, Plaintiff worked as a psychiatric LPN at the GS6 pay grade with the ability to advance to GS7 both before and after his reassignment in July 2006. On these facts, Plaintiff has failed to sustain his burden of establishing a materially adverse employment action and Defendant is entitled to summary judgment on the sex discrimination claim.

**B. Retaliation**

Count II of Plaintiff's complaint charges Defendant with retaliation. Plaintiff alleges that the January 2006 memo and his July 2006 detail and reassignment were in retaliation for his late 2004 equal pay and January 2006 discrimination complaints. To establish a prima facie case of retaliation, Plaintiff must demonstrate that "(1) he or she engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action." *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008). Although some cases indicate that the definition of "adverse employment actions" is broadened in the context of a Title VII retaliation claim to include "conduct that would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination,'"[4] Plaintiff's failure to explain the significance of the differences between his positions in MHICM and B2North causes him again to fall short of his burden of proof. Without additional evidence, the Court cannot conclude that a reasonable person would refrain from making a discrimination claim for fear of being transferred from one psychiatric LPN position to another at the same rate of pay and with the same opportunities for promotion. Therefore Plaintiff's retaliation claim must likewise fail.

Accordingly,

---

[4] *Id.* (quoting *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415 (2006)); *but see Smith v. City of Salem, Ohio*, 378 F.3d 566, 575 (6th Cir. 2004). Neither party in this case has acknowledged the existence of a different "adverse employment action" standard for retaliation claims and, therefore, neither party has addressed the proper application of this standard to the facts of this case.

**IT IS ORDERED** that Defendant's motion for summary judgment is **GRANTED**.

A judgment consistent with this opinion will issue.

<pre>                              s/PATRICK J. DUGGAN
                              UNITED STATES DISTRICT JUDGE</pre>

Copies to:
Robert D. Starkman, Esq.
William L. Woodard, A.U.S.A.